```
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

Darren Starr

    v.                                    Civil No. 05-cv-368-JD

Dennis Cox, et al.


                                  <u>O R D E R</u>

    Darren Starr has filed a complaint pursuant to 42 U.S.C. § 1983 alleging violations of his right to practice his religion under the First and Fourteenth Amendments to the United States Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Because Starr is a prison inmate filing *pro se* and *in forma pauperis*, his complaint is before me for preliminary review to determine whether or not it states any claim upon which relief might be granted. As explained herein, I find that the complaint alleges sufficient facts to state claims for relief under the First and Fourteenth Amendments and RLUIPA and I direct that the complaint be served upon the defendants.

Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action *pro se* and *in forma pauperis*, the magistrate judge is directed to conduct a preliminary review and to prepare a report and recommendation advising the district judge whether the complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2); 1915A. In conducting the preliminary review, the Court construes *pro se* pleadings liberally. See <u>Ayala Serrano v. Lebron Gonzales</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) to construe *pro se* pleadings liberally in favor of the *pro se* party). "The policy behind affording *pro se* plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."

Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). Application of this standard ensures that *pro se* pleadings are given fair and meaningful consideration. See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

## Background

Darren Starr has been practicing Tai Chi as part of his religious and spiritual practice since 1984. Although Starr has been incarcerated by the New Hampshire Department of Corrections ("NHDOC") since 1987, he has maintained a regular and frequent Tai Chi practice during his incarceration. Starr does not claim membership in any particular religious group, but does state that Tai Chi is part of his religious and spiritual practice because he engages in Tai Chi as a form of moving meditation, prayer, and connection with the universe and with God. In particular, Starr

3

states that while he has studied Taoism[1] and its teachings related to the practice of Tai Chi, he is not a Taoist and wishes neither to become a Taoist nor to be identified as a Taoist.

Starr alleges that during most of his incarceration, his daily practice of Tai Chi was permitted by prison officials. He routinely practiced Tai Chi in the caged exercise yard at the Secure Housing Unit at the New Hampshire State Prison ("NHSP"), in the individual yards of other NHSP housing units, in the NHSP gym, in the NHSP North Yard, in various areas of the Northern New Hampshire Correctional Facility ("NCF") from 2000-2002, and at the Maine State Prison while he was there as a transferred inmate.

Starr claims that in 2002, then Warden Bruce Cattell began

---

[1] Taoism has been practiced as a religion for at least several centuries. The Taoist religion includes Tai Chi practice as part of the spiritual exercise of that religion. See Adams v. Stanley, 2002 DNH 216 (Jan. 3, 2003).

> The study of Tao originated in China: its history spans thousands of years. Its methods, doctrines, and practices have evolved into a sprawling and complicated system that cannot be grasped even with a lifetime of study. Some individuals try. Initiates into religious Taoism, having both the calling and opportunity, follow an arduous and devout life.

Deng Ming-Dao, Everyday Tao: Living with Balance and Harmony at viii (HarperSanFrancisco 1996).

to place restrictions on the practice of Tai Chi at NCF, even forbidding it entirely for a period of time in 2002. As a result of a lawsuit brought in this Court, Tai Chi was again allowed at NCF with specific restrictions.[2] According to a memo dated October 18, 2002 inmates practicing Tai Chi could not touch one another, could not face off against one another or spar, could not use closed fists, and could not kick during their Tai Chi practice. On February 13, 2003, further restrictions to the practice of Tai Chi were added by prison officials. Specifically, Tai Chi was limited to the Taoist religious group study times, which were scheduled for two hour sessions twice a week. Additionally, certain inmates were allowed to have drawings of Tai Chi postures that had been approved by the NCF Chaplain. Again, on August 3, 2004, inmates were notified of Tai Chi restrictions in a memo with the subject line "Tai Chi for Taoist," including that Tai Chi be practiced only by individuals or in small groups.

In early May of 2005, Starr alleges that various staff members at the NCF began to sporadically prohibit him from engaging in his Tai Chi practice. Starr sent an Inmate Request

---

[2]The case to which Starr makes reference is <u>Richardson v. Stanley</u>, Civ. No. 02-518-PB.

Slip to Sue Young requesting permission to practice Tai Chi in the yard, on his pod, and in the gym on the basis that his Tai Chi practice is religious in nature and that he would comply with the movement restrictions imposed by the previous issued memoranda of the NCF staff.

On May 27, 2005, defendants Dennis Cox, as acting Warden of NCF and Dana Hoyt, NCF Chaplain, issued a memo dated May 27, 2005, which was given to Starr in response to his request to Young. That memo set out the parameters in which Tai Chi could be practiced at NCF. Specifically, the memo limited Tai Chi practice to inmates participating in the Taoist religion or inmates who attended Taoist study groups. The memo stated that inmates could not practice Tai Chi on their blocks unless they were "Taoist card-holders." Further, the memo restricted the possession of drawings of Tai Chi positions to those issued by the Chaplain's office, and stated that any Tai Chi movement that did not meet the definition of "gentle turning and stretching" movement would result in disciplinary action against the inmate.

In order to attempt to find an acceptable resolution to his complaints, Starr met with Chaplain Hoyt who advised Starr that he could only practice Tai Chi during the Taoist study group

which met twice a week in the education area unless Starr declared that he was a Taoist and became a card-carrying member of the Taoist group. Starr found that response unacceptable, both because he felt that imposing his Tai Chi practice on the Taoists study time was impolite, and because he did not consider himself a Taoist, although he does consider Tai Chi to be a religious and spiritual practice for him. Starr asked for a "Tai Chi card" which would allow him to practice Tai Chi on his housing unit without declaring himself to be a Taoist. Hoyt denied that request. Hoyt further expressed concern that if Starr were allowed to practice Tai Chi in the yard, he might "brush up against" another inmate, creating a security problem. Starr countered that he had been practicing Tai Chi in the yard, usually thirty-five to forty feet from other inmates, for years without incident. Further, other physical activities such as basketball, were allowed in the yard where inmates routinely brushed against one another or pushed off of one another.

Starr also alleges that the approved Tai Chi drawings are inadequate to assist him with learning Tai Chi, as they were drawn by an inmate who was a novice Tai Chi practitioner. The drawings fail to cover the wide array of permissible Tai Chi

practices and limiting Starr to those drawings is tantamount to limiting which prayers can be uttered by someone who prays with words. Further, Starr states that outdoor practice of Tai Chi is important to his religious beliefs as it allows for the proper flow of chi, or energy, from the earth to his body. Starr states that limiting permissible Tai Chi movements to "gentle turning and movement" not only excludes many noncombative Tai Chi movements, but is so vague as to allow Tai Chi practice to be limited by any prison official for arbitrary reasons. Starr alleges that all of these restrictions on his practice of Tai Chi unreasonably burden his religious practice.

Starr filed grievances requesting resolution with Acting Warden Cox, Warden Blaisdell, and finally to the Commissioner's office. All of his grievances were denied.

## Discussion

1. <u>RLUIPA Claim</u>

Section 3 of the RLUIPA provides in part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, unless the burden furthers a compelling governmental interest, and does so by the least restrictive means." Plaintiff is an

inmate who has not alleged that he is a member of an organized religious group at the NCF, but whose religious exercise requires that he be given more opportunities to study and practice Tai Chi than have lately been afforded to him. Starr claims that the defendants have failed to accommodate his religious exercise in violation of the RLUIPA by denying him the ability to practice daily Tai Chi, the ability to practice Tai Chi in his housing unit or outside, unreasonably limiting the movements he can include in his Tai Chi practice, unreasonably limiting his Tai Chi study and instructional materials, and by forcing him to declare himself a member of the Taoist religion in order to have his religious exercise accommodated.

The RLUIPA "defines 'religious exercise' to include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Cutter v. Wilkinson, 125 S. Ct. 2113, 2118 (2005) (citing 42 U.S.C. § 2000cc-5(7)(A)).[3] Further, "the RLUIPA does not differentiate among bona fide faiths . . . It confers no privileged status on any particular religious sect,

---

[3] The RLUIPA applies to any program or activity in a prison system that receives federal financial assistance. § 42 U.S.C. 2000cc-1(b)(1). The Supreme Court has recently found that every state accepts federal funding for its prisons. Cutter, 125 S. Ct. at 2119 n.4.
9

and singles out no bona fide faith for disadvantageous treatment." Cutter, 125 S. Ct. at 2123. While Starr does not identify his religious faith by name, he claims a continuous 21-year history of Tai Chi practice as part of his daily religious prayer and meditation. Starr has shared his beliefs with the defendants and this Court will not now undertake an evaluation of the sincerity of Starr's religious beliefs. I find that for purposes of preliminary review, Starr has stated that he is attempting to engage in a "religious exercise" as defined by the RLUIPA and interpreted by the Supreme Court. But see Id. at 2124 n.13 (finding prison officials may appropriately challenge the authenticity of an inmate's professed religiosity, but may not inquire as to whether a particular belief is "central" to the inmate's religion.)

"The RLUIPA protects institutionalized persons who are dependent upon the government for permission and accommodation for religious exercise." Spratt v. Wall, 2005 WL 3434739 at *2 (D.R.I. Nov. 21, 2005) (citing Cutter, 125 S. Ct. at 2122). When an inmate's religious exercise is burdened by prison regulations or restrictions, the government must do so only to satisfy a compelling governmental interest, and in the least restrictive

manner possible.  Cutter, 125 S. Ct. at 2119.  Starr's complaint acknowledges that the defendants have a compelling interest in maintaining institutional security and the safety of all of the inmates in NHDOC custody.  See Id. at 2122 ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety.")  Starr alleges that the accommodations he requested would not impact institutional security, because they are accommodations that are either provided to the members of the Taoist group, such as the ability to practice Tai Chi in their housing unit, provided to inmates engaging in other physical activities, or they are accommodations that Starr has been allowed in the past, such as the ability to practice Tai Chi outside, without any adverse impact on institutional security.

　　Starr alleges that he has been denied accommodations for his religious practices by means that are not the least restrictive available.  For instance, Starr alleges that he requested a "Tai Chi" card that would allow him to practice Tai Chi in his housing unit, similar to the card the Taoists were issued, but was told that he would have to adopt a new religion and become a Taoist in order to get such a card.  Forcing Starr to choose between

adopting a new religion or foregoing his daily meditation and prayer places a very heavy burden on Starr's religious practice. See Farrow v. Stanley, 2005 DNH 146 at *4 (concluding that "a prison policy substantially burdens religious exercise under RLUIPA if it coerces the inmate to modify his religious behavior significantly or to violate his religious beliefs.")  If I accept Starr's allegations, the burden that has been placed on Starr's religious practice is not the least restrictive means available to assure prison security.  Accordingly, I direct that the defendants be served with the RLUIPA claim.

2. First Amendment Claims

The First Amendment's religion clauses provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  The first clause, the Establishment Clause, mandates the separation of church and state.  The second clause, the Free Exercise Clause, requires that government respect and not interfere with the religious beliefs and practices of those protected by the United States Constitution.  See Cutter, 125 S. Ct. at 2120.

A.  Free Exercise Claim

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); see also, Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison."). The retained rights include the right to the free exercise of religion. Cruz v. Beto, 405 U.S. 319, 322 (1972). Prisons must provide all inmates reasonable opportunities to exercise their religious freedom. Id. at 322, n.2. When a prisoner raises a Free Exercise Clause claim, the prisoner must "establish that a challenged policy restricts the inmate's free exercise of a sincerely held religious brief." See, e.g., Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994); Barnett v. Comm'r, N.H. Dep't of Corr., 2000 DNH 101.

The Supreme Court has held that a prisoner's sincerely held religious beliefs must yield if contrary to prison regulations that are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also, O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-352 (1987)

13

(finding that the Constitution does not require the prison to sacrifice legitimate penological objectives to satisfy an inmate's desire to exercise his religion so long as an inmate is not deprived of all forms of religious exercise). A prison regulation must have a logical connection to the legitimate governmental interests invoked to justify it. Turner, 482 U.S. at 89-90. That connection may not be "so remote as to render the policy arbitrary or irrational." Id. As he has adequately alleged that the burden on his religious exercise is not rationally related to the legitimate government interest of maintaining institutional security, I find that Starr has stated a claim of a violation of the Free Exercise Clause upon which relief might be granted. Accordingly, I direct this claim to be served on the defendants.

  B. Establishment Clause Claim

  The Establishment Clause protects against governmental preferences for particular religious faiths, or coercion of religious practice "by force of law and threat of penalty." Cutter, 125 S. Ct. at 2126 (Thomas, J., concurring). Starr alleges that the defendants have interfered with and failed to respect his religious beliefs and practices by attempting to

force him to disclaim his own religious faith and join the Taoist religion, to which he does not adhere, in order to engage in his religious practices.  Starr alleges that the government is trying to impose a particular religion on him.  Further, the prison has threatened to take disciplinary action against an inmate who practices Tai Chi in a manner not conforming to rules that are vague, overly restrictive, and give rise to the possibility of abuse by corrections officials.  I find that Starr has adequately alleged an impermissible preference for a particular religion and coercion to state a claim under the Establishment Clause and will direct that this claim be served on the defendants.

3.   Equal Protection Claim

Finally, Starr claims that the defendants are violating his Fourteenth Amendment right to equal protection by discriminating against him on the basis of his religion.  To state an equal protection claim, Starr must allege that he is intentionally being treated differently from other similarly situated individuals without justification.  See Farrow, 2005 DNH 146 at *10 (citing Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004)).  Starr has alleged that other inmates who are presumably of similar security status at the NCF are allowed greater access to

15

Tai Chi than he is because they are Taoists and he is not, although Starr, like the Taoists, claims Tai Chi as a part of his religious practice.  Simply put, Starr claims that he has been discriminated against on the basis of his religion, and treated differently than similarly situated inmates as a result of that discrimination.  Starr's allegations are sufficient to allege an equal protection violation and I will direct that it proceed against the defendants.

4.   <u>Supervisory Liability</u>

Starr names Blaisdell, Cox, Crompton, and Curry as defendants to this action in their individual supervisory capacities.  "Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions."  <u>Matos v. Toledo Davila</u>, 135 F.3d 182, 192 (1st Cir. 1998).  A supervisor must be "either a primary actor involved in, or a prime mover behind, the underlying violation."  <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 43-44 (1st Cir. 1999).  There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization."  <u>Id.</u> at 44.  Based on the facts alleged in the complaint, the named supervisors' actions

can be construed as conduct that amounts to authorization and condonation of the improper retaliation alleged. Accordingly, I will allow this action to proceed against the above-named defendants in their individual supervisory capacities.

## Conclusion

As I find that plaintiff has stated claims upon which relief may be granted, I order the complaint (document no. 1) be served on Defendants. The Clerk's office is directed to serve the New Hampshire Office of the Attorney General ("AG"), as provided in the Agreement On Acceptance Of Service, copies of this order and the complaint (document no. 1). See LR 4.3(d)(2)(C). Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf. When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last

known addresses of such defendants.  The Clerk's office is instructed to complete service on these individuals by sending to them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within thirty days of acceptance of service.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date:    February 10, 2006

cc:      Darren Starr, *pro se*