**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Darren Starr</u>

      v.                          Civil No. 05-cv-368-JD

<u>Major Dennis Cox et al.</u>

### REPORT AND RECOMMENDATION

Plaintiff Darren Starr is a New Hampshire state prisoner currently being housed at the New Hampshire Department of Corrections' Northern Correctional Facility ("NCF"). He moves for a preliminary injunction on his claim that the Defendants[1] have violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, by enforcing policies that unduly restrict Plaintiff's practice of Tai Chi. <u>See</u> Document No. 7. Defendants object.

The Court held an evidentiary hearing on Plaintiff's motion on April 20, 2006 during which the Court heard testimony, observed Tai Chi demonstrations by Plaintiff and another witness,

---

[1]Plaintiff names as defendants in this action Major Dennis Cox, Reverend Dana Hoyt, Warden Larry Blaisdell, Greg Crompton and former Commissioner Stephen Curry. At the time this action was filed, the defendants were all employees of the New Hampshire Department of Corrections.

and observed two videotapes displayed by Defendants.  Since I
find that Plaintiff has not demonstrated through sufficient
evidence that he is likely to succeed on the merits of his
claims, I recommend that his motion be denied.

Standard of Review

A court may grant a plaintiff's request for a preliminary
injunction if the plaintiff satisfies a four-part test: (1) the
plaintiff is likely to succeed on the merits; (2) the plaintiff
will suffer irreparable harm if the injunction is not granted;
(3) the injury to the plaintiff outweighs any harm that granting
the injunction would inflict on the defendant; and (4) the public
interest will not be adversely affected by the granting of the
injunction.  See Wine & Spirits Retailers, Inc. v. Rhode Island,
418 F.3d 36, 46 (1st Cir. 2005).  "The sine qua non of this four-
part inquiry is likelihood of success on the merits: if the
moving party cannot demonstrate that he is likely to succeed in
his quest, the remaining factors become matters of idle
curiosity."  New Comm Wireless Servs., Inc. v. SprintCom, Inc.,
287 F.3d 1, 9 (1st Cir. 2002).  A party seeking injunctive relief
must independently satisfy each of the four factors.  See Auburn
News Co. v. Providence Journal Co., 659 F.2d 273, 277 (1st Cir.

2

1981).

## Background

Plaintiff seeks an order enjoining Defendants from interfering with his daily practice of Tai Chi Chuan ("Tai Chi")[2] in his living area, prohibiting him from practicing Tai Chi in the general prison yard, prohibiting him from practicing any style or form of Tai Chi as long as he refrains from prohibited movements,[3] or restricting his possession of instructional material. See Document No. 7 at 2, ¶ 3. The facts pertinent to the Court's consideration of whether Plaintiff has demonstrated

_____

[2]Tai Chi is a slow movement form of art that is primarily practiced for health benefits and exercise. It is important to note, however, that every Tai Chi move has a martial arts application. The term "Tai Chi Chuan" literally means "Supreme Ultimate Boxing." See Def.'s Ex. D. As originally conceived, Tai Chi Chuan is "a sophisticated method of fighting based on the reconciliation of dynamically interacting forces." Id. A number of styles of Tai Chi have been developed over time. See Def.'s Ex. C and D.

[3]NCF's guidelines on movement for Tai Chi prohibit any moves that could be deemed combat moves, facing off, touching other participants, moving toward other participants, punches and kicks. See Def.'s Ex. H. The guidelines further specify that inmates may only practice "Taoist Tai Chi." Id. The International Taoist Tai Chi Society states on its website that "[i]n Taoist Tai Chi, movements originally derived from Yang style Tai Chi Chuan have been deliberately transformed with a view toward maximising health benefits in a way that is often inconsistent with the purposes and strategies of self-defence training." See http://taoist.org/english/about_taoist.php.

3

that he is entitled to injunctive relief are included within the
discussion of the Plaintiff's grievances.

Discussion

I.    Standard of Review Under RLUIPA

Section 3 of RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined
> to an institution . . . unless the government
> demonstrates that imposition of the burden on that
> person --
>
> (1) is in furtherance of a compelling governmental
> interest; and
>
> (2) is the least restrictive means of furthering that
> compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).[4]   The term "religious exercise"
is statutorily defined to mean "any exercise of religion, whether
or not compelled by or central to, a system of religious belief."
42 U.S.C. § 2000cc-5(7)(A).   The term "substantial burden" is not
defined in the statute, but this court has found that "a prison
policy substantially burdens religious exercise under RLUIPA if
it coerces the inmate to modify his religious behavior
significantly or to violate his religious beliefs."   Prayer

---

[4]RLUIPA applies to any program or activity that receives
federal financial assistance.   42 U.S.C. § 2000cc-1(b).
Defendants do not dispute that the RLUIPA applies in this case.

Feather Farrow v. Stanley, Civ. No. 02-567-PB, 2005 DNH 146, 13
(D.N.H. Oct. 20, 2005).

To prevail on a claim under Section 3 of RLUIPA, a prisoner
must establish a prima facie case that the challenged policy or
regulation imposes a substantial burden on his exercise of
religion.  42 U.S.C. § 2000cc-2(b); see also Warsoldier v.
Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  If the prisoner
makes this prima facie showing, the burden shifts to prison
officials to demonstrate that the policy or regulation furthers a
compelling governmental interest by the least restrictive means.
42 U.S.C. § 2000cc-2(b); see also Warsoldier, 418 F.3d at 995.
Congress has directed that the RLUIPA "shall be construed in
favor of a broad protection of religious exercise, to the maximum
extent permitted by the terms of this chapter and the
Constitution."  42 U.S.C. § 2000cc-3(g).

Although RLUIPA imposes a high standard on institutions for
accommodation of the free exercise of religion,[5] the Supreme

---

[5]The Supreme Court established a deferential rational
relationship analysis for prisoners' free exercise claims under
the Constitution.  See Turner v. Safley, 482 U.S. 78 (1987).
Therefore, to the extent that a prisoner's free exercise claim
fails under RLUIPA, that same claim would also fail under the
Constitution.  See Murphy v. Mo. Dept. of Corr., 372 F.3d 979,
986 (8th Cir. 2004).

Court has found that Congress anticipated that even after the
passage of RLUIPA courts would still continue to accord "due
deference to the experience and expertise of prison and jail
administrators." Cutter v. Wilkinson, 125 S. Ct. 2113, 2119
(2005) (citations omitted). "Should inmate requests for
religious accommodations become excessive, impose unjustified
burdens on other institutionalized persons, or jeopardize the
effective functioning of an institution, the facility would be
free to resist imposition." Id. at 2125.

II.  Likelihood of Success on the Merits

    A.  Plaintiff's Burden Under RLUIPA

        1.  Religious Exercise

The first element that Plaintiff must establish is that the
activity that he seeks to engage in is an exercise of religion.
Under RLUIPA, a prisoner need not establish that a particular
belief or practice is "compelled by, or central to, a system of
religious belief." 42 U.S.C. § 2000cc-5(7); Cutter, 125 S. Ct.
at 2124 n.13. Nevertheless, a prisoner is not entitled to an
accommodation under RLUIPA merely because he labels an activity
that he wishes to engage in "religious." The Supreme Court has
noted that "prison officials may appropriately question whether a

prisoner's religiosity, asserted for a requested accommodation, is authentic." Id. Thus, RLUIPA does not require prison officials to accommodate a request that is not based on a "truly held" religious belief.

Plaintiff testified that he learned Tai Chi through studying the Tao, but that he did not want to follow the Taoist path because he believed that there were errors in their religious belief. He acknowledged during his testimony that he did not have a sincerely held belief in Taoism, but asserts that he has continued to practice Tai Chi as part of his spiritual activity.

Plaintiff asserts that Defendants' decision to issue him a Tai Chi practitioner card shortly before the hearing is a concession that his practice of Tai Chi is a religious exercise. Defendants disagree.

NCF has recognized Taoism as a religion, and that the practice of Taoism includes some forms of Tai Chi. See Adams v. Stanley, 237 F. Supp. 2d 136, 141 (D.N.H. 2003). But the practice of Tai Chi, by itself, is not recognized as a religion. Defendants assert that they issued Plaintiff a Tai Chi practitioner's card in order to avoid unnecessary litigation, but they do not concede that Plaintiff's practice of Tai Chi is

7

protected under RLUIPA. Reverend Hoyt testified that after
interviewing Plaintiff on two occasions he was not convinced that
Plaintiff's alleged religious belief in the practice of Tai Chi
is sincere.[5]

During Plaintiff's interviews with Reverend Hoyt, Plaintiff
stated that he has been practicing Tai Chi since 1984. Plaintiff
indicated that he studies the Taoist faith, but that he did not
want to declare himself a Taoist or join the Taoist group.
Plaintiff further asserted that Tai Chi is a form of meditation,
he requires it every day, and that practicing Tai Chi completes
four parts of being human: mental, emotional, physical and
spiritual. When Reverend Hoyt asked Plaintiff how he could
demonstrate that he was sincere in his belief that Tai Chi is a
religious practice, Plaintiff responded that one could tell that
his Tai Chi was meditative if one watched Plaintiff practice.

_____

[5]All religious activities at NCF are coordinated through the
NCF Chaplain. Reverend Hoyt testified that as the Chaplain he
administers 16 different religions at NCF, which includes
scheduling religious activities, maintaining lists of
practitioners of particular faiths, and making assessments of the
sincerity of prisoners' religious beliefs. Under NCF's current
policy, an inmate must be associated with a particular religion
in order to be granted allowances. Typically for an alleged
religious practice to be allowed within the prison it must be
practiced somewhere outside of the prison. Prisoners are not
allowed to make up their own religion and religious practices.

8

Reverend Hoyt found Plaintiff's responses to his inquiries unsatisfactory. He further noted that although Plaintiff claimed that he needed to practice Tai Chi every day, he rejected the option of practicing Tai Chi twice a week in the education area during time reserved for members of the Taoist group. Although Plaintiff claims that this option forces him to identify with the Taoist group, Reverend Hoyt testified that every inmate, unless restricted by security classification, is permitted to attend any activity on the chapel schedule. Reverend Hoyt further testified that he was not aware of any member of the Taoist group objecting to anyone else using the education area to practice Tai Chi during the time scheduled for the Taoist group. Therefore, there is no objective reason why Plaintiff could not perform Tai Chi in the education area while segregating himself from the Taoists. Additionally, Defendants questioned the sincerity of Plaintiff's religious beliefs because Plaintiff has twice been issued disciplinary reports for practicing prohibited martial arts moves while claiming that he was practicing Tai Chi.[7]

---

[7]Both of those disciplinary reports were written by Correction Officer Ruel who testified regarding his observations at the hearing. The disciplinary reports were dismissed for procedural reasons, see Def.'s Ex. A and B, but Plaintiff admitted during his testimony to incorporating Karate movements into his Tai Chi practice. Plaintiff claims that incorporating

9

Furthermore, the evidence presented does not support a
finding that Tai Chi, apart from Taoism as a system of religious
belief,[6] is a religious activity.  While Plaintiff submitted an
article entitled Zen and Meditation that describes Tai Chi as a
"form of meditation in motion," the article further states that
Tai Chi "has a variety of aims and benefits," and does not
describe Tai Chi as a religious activity.  See Attach. No. 1 to
Pl.'s Mot. for a Preliminary Injunction.  Nor do Plaintiff's
other authorities discuss Tai Chi as a religious activity.
During the hearing, Plaintiff repeatedly referred to his practice
of Tai Chi as prayer, but he did not provide any authority
referring to it as such.  The Court further notes that Ms. Betsey
Foster, who has practiced Tai Chi with several Tai Chi masters
since 1988 and has taught Tai Chi since 1993, testified that she

---

Karate movements into his practice is part of his religious
beliefs, but he did not provide any persuasive evidence to
support that claim.

[6]Plaintiff misconstrues the definition of the term
"religious exercise" in RLUIPA.  The statute provides that a
religious exercise may be protected under RLUIPA "whether or not
compelled by, or central to, a system of religious belief."  42
U.S.C. § 2000cc-5(7)(A) (emphasis added).  But it does not exempt
Plaintiff from establishing that his religious exercise is part
of a system of religious belief.  Thus, Plaintiff's claim that he
personally views his practice of Tai Chi as meditation and prayer
is insufficient to satisfy his burden of persuasion.

10

never heard anyone assert that Tai Chi was a religious activity
prior to hearing Plaintiff's testimony in this case.

After reviewing all of the evidence presented, the Court
finds that Plaintiff did not demonstrate through sufficient
evidence that he is likely to succeed in demonstrating that his
practice of Tai Chi should be considered a religious exercise
protected under RLUIPA.

2.    Substantial Burden

Plaintiff claims that the Defendants have substantially
burdened his religious behavior by forcing him to modify his Tai
Chi practice significantly. He challenges restrictions that
prohibit him from practicing Tai Chi in the general prison yard,
require him to obtain permission before he practices on his
block, and limit the style or form of Tai Chi that he may
practice. If the district judge accepts this Court's finding
that Plaintiff has not demonstrated that his practice of Tai Chi
is entitled to protection as a religious exercise, Plaintiff's
argument that the restrictions on his practice of Tai Chi unduly
impose substantial burdens necessarily fails. Even assuming that
Plaintiff has come forward with sufficient evidence to establish
that his practice of Tai Chi is a protected religious exercise,

11

however, Defendants presented evidence at the hearing to rebut
Plaintiff's claims that his practice of Tai Chi is being
substantially burdened.

### a. Practice in the Prison Yard

Plaintiff alleged in his motion for injunctive relief that
the total denial of his right to practice Tai Chi outside was a
substantial burden on his exercise of religion. He alleged that
he needs to practice Tai Chi in the general prison yard because
he needs to be in direct contact with the ground for proper
"rooting." See Pl.'s Ex. 2-4. At the hearing, however,
Plaintiff admitted that it is possible to root indoors.
Plaintiff further admitted that Tai Chi should not be practiced
outside in extreme weather conditions or when it is windy.

To rebut Plaintiff's substantial burden claim, Defendants
rely on testimony from Ms. Foster who stated that where a person
practices Tai Chi is a matter of personal preference. Ms. Foster
testified that her own preference is to practice Tai Chi indoors.
Major Cox also testified that although inmates were now
prohibited from practicing Tai Chi in the yard, inmates would be
permitted to practice outside in a designated area upon request.

Based on Plaintiff's testimony at the hearing, and the

12

Defendants' rebuttal evidence, the Court is not persuaded that Plaintiff is likely to succeed in demonstrating that the Defendants have substantially burdened his exercise of religion by prohibiting him from practicing Tai Chi in the prison yard.

            b.    Practice in Plaintiff's Living Area

Plaintiff claims that he is substantially burdened in practicing Tai Chi in his living area. He admits that he is not restricted from practicing Tai Chi in his cell, but he argues that he should not be required to ask for permission to practice Tai Chi on his block. Plaintiff compared that requirement to forcing a Muslim inmate to ask for permission before praying. Plaintiff further noted secular activities, such as use of a jungle gym, that inmates are allowed to engage in on the block without requesting permission.

Major Cox testified that NCF's policy provides that Tai Chi must be coordinated with the Direct Supervision Officer ("DSO") because it is a martial art. Defendants displayed video during the hearing showing an inmate, who claimed to be practicing Tai Chi, doing several prohibited snap kicks and side kicks on one of NCF's blocks. Requiring inmates to coordinate their practice of Tai Chi with the DSO facilities the prison's ability to monitor

13

the practice of Tai Chi.

Plaintiff complains that the DSOs have too much discretion to deny inmates permission to practice Tai Chi, but there is no evidence in the record showing that DSOs have denied requests to practice Tai Chi for no valid reason. Major Cox testified that DSO's are granted discretion because there could be any number of reasons why it might inappropriate to allow an inmate to practice Tai Chi on the blocks at a particular time. The Court finds that Plaintiff has not demonstrated that he is likely to succeed on his claim that the Defendants have substantially burdened his exercise of religion by requiring him to coordinate his practice of Tai Chi on his block with the DSO.

        c.    Practice with the Taoists

As discussed previously, the Court finds no objective reason why Plaintiff cannot practice Tai Chi twice a week in NCF's education area if he so chose. Plaintiff has not been required to declare himself a Taoist, NCF officials do not intend to classify him as a Taoist, and members of the Taoist group are not allowed to keep Plaintiff out of the education area. Accordingly, the Court does not find that Plaintiff is likely to succeed in demonstrating that he is substantially burdened by

14

having to practice Tai Chi in the same space as members of the
Taoist group.

           d.    Restrictions on Manner of Tai Chi Practice

Finally, Plaintiff testified that he is substantially
burdened because he is forced to modify the manner in which he
practices Tai Chi. Plaintiff complains that NCF limits him to
practicing Yang style Tai Chi. Plaintiff further complains that
correctional officers working on NCF's second shift have refused
to allow him to perform "leg extensions" because they consider
them to be kicks, which are banned under NCF's guidelines on
movement for Tai Chi.

During the hearing, Plaintiff demonstrated the type of leg
extension that he sought to perform. His demonstration included
lifting his leg upward, holding it, and then extending it forward
into another move. Upon questioning, Plaintiff admitted that the
movement he performed was Wu style Tai Chi. Ms. Foster testified
that Wu style Tai Chi is more compact and more explosive than
Yang Style Tai Chi. Ms. Foster testified, and demonstrated, that
it is possible to modify Yang style Tai Chi forms in a manner
where the leg is extended forward, but not upward, without
substantially altering the meditative aspect of the form.

Plaintiff asserts that he has learned through his study that he should not limit himself in the Tai Chi forms that he practices, and that Tai Chi is adaptive to the individual. Whether or not that claim is true in the secular practice of Tai Chi, I find no support in the record for Plaintiff's claim that limiting him to Yang style Tai Chi substantially burdens the practice of Tai Chi as a religious exercise.

e.   Instructional Materials

Plaintiff claims that NCF's policy limits him to the possession of Tai Chi instructional materials that were drawn by Anthony Lim, another NCF inmate. He testified that Mr. Lim has no credentials as a Tai Chi instructor, and that the drawings he made were of basic moves for his own reference.

Defendants respond that NCF's policy only requires inmates to seek approval for Tai Chi instructional material through the Chaplain. See Def.'s Ex. H. NCF has not limited Plaintiff, or any other inmate, to only those drawings prepared by Mr. Lim. Defendants clarified that to the extent that Plaintiff seeks to possess other Tai Chi instructional materials, his remedy in the first instance is to seek approval for those materials through the Chaplain. Plaintiff has not done so. Accordingly, I find no

16

support for Plaintiff's claim that the Defendants are unduly limiting his possession of Tai Chi instructional materials.

In sum, I find that Plaintiff has not sufficiently demonstrated with evidence that he is likely to succeed on the merits of his claim that Defendants have substantially burdened his practice of a religious exercise.

B.    Defendants' Burden Under RLUIPA

Even if the Plaintiff were able to satisfy his burden of persuasion under RLUIPA, he cannot succeed on the merits if the Defendants are able to demonstrate that the restrictions imposed on Plaintiff's religious exercise are the least restrictive means available for furthering a compelling interest. I consider the evidence that Defendants' presented to meet their burden next.

1.    Compelling Interest

There is no dispute that prison security is a compelling state interest and that prison officials are entitled to deference in this area. See Cutter, 125 S. Ct. at 2124 n.13. Particularly with regard to the practice of Tai Chi by prisoners, Defendants submitted substantial evidence to support their assertion that close supervision over inmates who practice Tai Chi is necessary in order to maintain safety and security.

17

Major Cox testified that he observed the force that can be created even through slow movement Tai Chi while he was serving in the Marines in the Far East before beginning his career with the New Hampshire Department of Corrections. Major Cox also testified that, prior to the hearing, he observed Ms. Foster use slow movement Tai Chi to easily throw off balance a man of much larger stature than herself. He has security concerns about inmates practicing any martial art because that could jeopardize the safety of prison staff and other inmates.

Despite NCF's guidelines on movement for Tai Chi, Major Cox testified that he has observed inmates at NCF doing movements that were clearly offensive in nature while professing to do Tai Chi. His testimony was supported by the video that was displayed during the hearing. See Def.'s Ex. L and O. Major Cox further testified that the Tai Chi moves that Plaintiff demonstrated during the hearing were martial arts techniques that could lead to someone being injured.

C.O. Ruel testified that he has 15 to 20 years of experience practicing Shaolin Kempo Karate, and that he has advanced to the level of third degree black belt. He testified that Kempo Karate is designed for multiple strikes and defending against multiple

18

enemies.   The element called "chi" acts like a force multiplier in Tai Chi and Karate.   C.O. Ruel testified that he has observed a Tai Chi master break a sixteen-inch chimney block with a slap. He was confident that Tai Chi could be used to injure or maim another person.

C.O. Ruel further testified that a person could improve their skill in Tai Chi and other martial arts, even without sparring with an opponent, through the use of visualization.   He testified that in his observations of Plaintiff practicing Tai Chi and Karate forms, he believes that Plaintiff has already developed the ability to disable someone if he chose to do so.

Ms. Foster testified that Tai Chi is practiced primarily for health benefits and improving balance and coordination, but that a small component of practitioners use it as a martial art.   She has studied the martial arts application of Tai Chi referred to as "push hands."   Ms. Foster described Tai Chi as an internal art where a person envisions the muscles as being very soft, but the internal will and mind as strong as iron.   In contrast, Karate is external in the sense of achieving hardness in the limbs.   Ms. Foster testified that when you combine the two arts the result is explosive.

After hearing and observing the Defendants' evidence, the Court finds that Defendants have amply demonstrated that the prison has a compelling interest in maintaining close supervision over inmates who want to practice Tai Chi in order to maintain safety and security at the prison.

2.    Least Restrictive Means

The next issue to be considered is whether Defendants have demonstrated that the restrictions that are imposed on the Plaintiff's practice of Tai Chi are the least restrictive means available to further the prison's compelling interests. Defendants argue that restricting the times and locations where Tai Chi is practiced, and limiting the manner in which Tai Chi is practiced, is the least restrictive means available for satisfying the prison's security interests.

Major Cox testified that the restriction of Tai Chi to the blocks and the education area was made so that inmates can be closely observed. In the prison yard, there is only one correctional officer present to supervise up to 175 inmates. And although the prison monitors the yard using security cameras, conditions within the prison can become violent within moments. Other activities occurring in the prison yard where physical

20

contact between inmates may occur, such as basketball, handball, or jogging, may be distinguished from Tai Chi in that none of those activities have martial arts applications.

Plaintiff argues that the prison's guidelines on movement for Tai Chi already satisfy the prison's legitimate security concerns without the need for restricting where and when he practices Tai Chi or the particular style of Tai Chi that he practices. But the Defendants have demonstrated that monitoring how inmates practice Tai Chi is a critical component of addressing the prison's security concerns.

Plaintiff further argues that the Defendants are estopped from asserting that the restrictions on the practice of Tai Chi that he challenges in this action are necessary in light of stipulations that were made in a prior action brought in this court, Richardson v. N.H. Dept. of Corrs., No. 02-cv-518-PB. Plaintiff's estoppel argument is misplaced.

Judicial estoppel is an equitable doctrine that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phrase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (citations omitted). The purpose of the doctrine is to

21

"protect the integrity of the judicial process," by "prohibiting
parties from deliberately changing positions according to the
exigencies of the moment." Id. at 749-750 (citations omitted).
Among the factors that courts consider in determining whether
judicial estoppel applies is whether a party's later position is
"clearly inconsistent" with its earlier position. Id. at 750.
If it is not, judicial estoppel does not apply.

The plaintiff in Richardson brought free exercise claims
under the Constitution challenging NCF's alleged infringement of
various aspects of his practice of religious Taoism. The claims
that the plaintiff asserted were not brought under RLUIPA, nor
were they focused solely on the practice of Tai Chi. The Court
finds nothing in the record of the Richardson case that can be
construed as a limitation on the restrictions that the prison
could impose on the practice of Tai Chi by inmates for security
reasons. Rather, it appears that the prison agreed to allow
members of the Taoist group reasonable opportunities to practice
Tai Chi consistent with the prison's security concerns.

In the instant case, the evidence shows that the Defendants
considered and tried less restrictive measures for accommodating
the practice of Tai Chi before adopting the policies that

22

Plaintiff now challenges.  NCF officials understandably
determined, after monitoring inmates' practice of Tai Chi, that
additional restrictions were necessary in order to ensure
security.  That NCF previously allowed Plaintiff to practice Tai
Chi in the prison yard, for instance, does not establish that the
prison does not have a legitimate need to impose greater
restrictions to ensure security.  I find that the doctrine of
judicial estoppel does not apply here because the Defendants'
position in the instant case is not clearly inconsistent with the
position that the prison took in the Richardson case.

     After considering the evidence presented, the Court finds
that the Defendants have demonstrated that the additional
restrictions that the Defendants have imposed on the practice of
Tai Chi are the least restrictive means of permitting inmates to
practice Tai Chi while still serving the prison's compelling
interest of insuring the safety and security of staff and other
inmates.  Accordingly, I find that Plaintiff has not demonstrated
that he is likely to succeed on the merits on his RLUIPA claims.
III. Other Preliminary Injunction Factors

     Since I find that Plaintiff has not demonstrated a
likelihood of success on the merits of his claims, I find that a

23

preliminary injunction is not warranted without considering the remaining preliminary injunction factors.

### Conclusion

For the reason set forth above, I recommend that Plaintiff's motion for a preliminary injunction (document no. 7) be denied.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: May 11, 2006

cc:  Darren Starr, pro se
     Mary E. Maloney, Esq.