UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Darren Starr


    v.                                Civil No. 05-cv-368-JD
                                         Opinion No. 2008 DNH 089

Dennis Cox, et al.


O R D E R

    Darren Starr is a prisoner housed at the New Hampshire
Department of Corrections' Northern Correctional Facility
("NCF").  He brings claims against various personnel at that
facility[1] ("defendants") alleging violations of the First
Amendment, the Equal Protection Clause of the Fourteenth
Amendment, and the Religious Land Use and Institutionalized
Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA").  The defendants
move for summary judgment, and Starr has objected.  The
defendants have filed a reply.  Starr moves to strike the
defendants' reply pursuant to Local Rule 7.1(e)(1).  In the
alternative, Starr has requested leave to file a surreply motion,

---

    [1]Starr names as defendants in this action Major Dennis Cox,
Chaplain Dana Hoyt, Warden Larry Blaisdell, Greg Crompton and
former Commissioner Stephen Curry.  At the time this action was
filed, the defendants were all employees of the New Hampshire
Department of Corrections.

pursuant to L.R. 7.1(e)(3).  The defendants objected to Starr's
motion to strike but not to his motion to file a surreply.

I.    Starr's Motion to Strike and Motion to File a Surreply

A.    Starr's Motion to Strike

     Starr argues that the defendants violated L.R. 7.1(e)(1)
because they did not provide him or the court with notice within
three days after they filed a reply and because the reply is more
than ten pages in length.  In the defendants' objection, they
state that they orally notified the clerk's office of their
intent to file a reply but did not alert Starr.  The defendants
argue that it would be "virtually impossible to provide [Starr]
with either oral notice, within or beyond the required three-day
time frame" because of Starr's incarcerated status.  Def. Obj. to
Starr Mot. St. at 1-2.  The defendants also argue that Starr
suffered no prejudice as a result of their failure to provide him
adequate notice.

     According to L.R. 7.1(e)(1), "[a]bsent notice the
dispositive motion shall be deemed ripe when the objection or
opposition to the dispositive motion is filed."  In Bryne v.
Brunswick Corp., 2007 WL 1847309, at *2 (D.N.H. June 26, 2007),
this court held that "the purpose of Local Rule 7.1(e) is to

establish a time when a motion is ripe for consideration by the court.  Failure to file a notice of intent to file a reply simply results in the motion being ripe without waiting for a reply." In Bryne, the party that moved to strike based on Local Rule 7.1(e) provided no basis to strike the reply, and for this reason, the court denied the motion.  Id.  Similarly, in this case, Starr has not explained how he was prejudiced and has offered no basis to strike the defendants' reply other than citing to Local Rule 7.1(e)(1).

Starr also argues that the defendants' reply should be stricken because it is two pages over the page limitation outlined in L.R. 7.1(e)(1).  The defendants concede that the reply exceeds the page limitation by two pages but argue that striking the reply is too severe.  They ask for leave of court to exceed the page limitation, or in the alternative, to amend their reply to comply with the ten page limit.

The defendants' reply is one page over the limit in addition to the signature page.  Leave is granted to exceed the page limit under these circumstances.  The court denies Starr's motion to strike.

B.   <u>Starr's Motion to File Surreply</u>

Pursuant to L.R. 7.1(e)(3), Starr moves to file a surreply motion, arguing that a surreply is necessary because the defendants have presented incorrect facts and legal argument in their reply to Starr's objection to summary judgment.  Starr filed his motion for leave to file a surreply within ten days of the defendants' reply, but Starr did not attach a surreply memorandum.

According to L.R. 7.1(e)(3), "[m]otions for leave to file a surreply will only be granted under extraordinary circumstances." For example, in <u>Tech. Planning Intern., LLC v. Moore North America, Inc.</u>, 2003 WL 21228642, at * 11 (D.N.H. May 23, 2003), this court denied a motion for leave to file a surreply where the party failed to demonstrate that the case presented "extraordinary circumstances" warranting the relief it sought.

In Starr's motion for leave, he argues that the defendants submitted facts in their reply that incorrectly describe the teachings of the Jehovah's Witnesses and that the defendants have misrepresented Starr's personal beliefs concerning this religion. After carefully considering Starr's objection to summary judgment, where he explains the teachings of the Jehovah's Witnesses and his personal beliefs, and construing the facts in a light most favorable to Starr (as the non-moving summary judgment

4

party), the court credits Starr's description of this religion and the nature of his personal beliefs.  In addition, as described more fully below, the court has concluded that Starr has raised a dispute of material fact as to the sincerity of his religious beliefs and as to whether practicing Tai Chi despite following the tenets of the Jehovah's Witnesses is part of a system of religious belief.  For this reason, a sureply motion further explaining the teachings of the Jehovah's Witnesses will not bolster the court's understanding of this religion and will not affect the outcome of the case.  Therefore, Starr has failed to establish that there are "extraordinary circumstances" requiring a sureply on this issue.

Starr also argues that a sureply is necessary because the defendants have presented mistaken legal arguments concerning RLUIPA.  In his objection to summary judgment, Starr has already presented a detailed and thorough legal analysis of RLUIPA.  The court has carefully reviewed RLUIPA, Starr's objection, and the defendants' motion for summary judgment and reply, and has determined that the defendants have not presented mistaken legal arguments as to this statute.  A sureply on this issue will not alter the outcome of the case.  Therefore, Starr has failed to establish that there are "extraordinary circumstances" requiring

a surreply on this issue.  For all of these reasons, Starr's
motion to file a surreply is denied.


II.  Summary Judgment

     Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The party seeking summary judgment must first demonstrate
the absence of a genuine issue of material fact in the record.
See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party
opposing a properly supported motion for summary judgment must
present competent evidence of record that shows a genuine issue
for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
256 (1986).  All reasonable inferences and all credibility issues
are resolved in favor of the nonmoving party.  See id. at 255.


Background

A.  Procedural History

     On March 29, 2006, Starr filed a motion for a preliminary
injunction, alleging that the defendants' Tai Chi restrictions

violated RLUIPA and violated his rights under the constitution. An evidentiary hearing on this motion was held before the magistrate judge on April 20, 2006.  Starr, NCF's Major Cox; Vincent Ruel, a corrections officer at NCF; Dana Hoyt, the Chaplain at NCF; and Betsey Foster, an experienced Tai Chi instructor, all testified.  The magistrate judge issued a report and recommendation denying Starr's motion which this court approved on June 5, 2006.[2]  On June 15, 2007, the defendants filed a motion for summary judgment.  This court terminated the motion without prejudice because the defendants failed to address two of Starr's claims.  On October 15, 2007, the defendants filed a revised motion for summary judgment which is presently before the court.

B.  <u>Tai Chi</u>

Starr's claims relate to the practice of Tai Chi Chuan ("Tai Chi") which is a slow-motion, moving meditative exercise that "promotes mental clarity and a healthy body."  Def. Summ. J., Ex. D, "What is Tai Chi?" available at http://www.patiencetaichi.com /what_is_tai_chi.htm.  "Tai Chi is practiced for religious and

---

[2]Starr appealed this order to the First Circuit on June 16, 2006.  On February 2, 2007, by mandate, the First Circuit affirmed the order.

secular reasons." <u>Adams v. Stanley</u>, 237 F. Supp. 2d 136, 139

(D.N.H. 2003).  For example, in <u>Adams</u>, the court stated that:

> According to the International Taoist Tai Chi Society, the
> health-enhancing qualities of Tai Chi Chuan are founded in
> the lore of religious Taoism.  Over a period spanning almost
> two millennia, various sects of Taoism have developed and
> perfected health exercises as part of their religious
> cultivation.  Eventually, Tai Chi began to be practiced by
> people outside of the monastic community and became
> widespread as a martial art.  It has, however, maintained a
> tenuous link to the more spiritual or religious facets found
> in Taoist training.

<u>Id.</u> at 139-140 (internal quotation marks and citations omitted).

In addition to its spiritual application, Tai Chi is

performed as a martial art.[3]  At the preliminary injunction

hearing, Betsey Foster, an experienced Tai Chi instructor,

explained that Tai Chi is an internal martial art because those

practicing it focus on internal strength.[4]  Foster testified that

---

[3]The term "Tai Chi" literally means "Supreme Ultimate
Boxing."  Def. Summ. J., Ex. D, "What is Tai Chi?" available at
http://www.patiencetaichi.com/what_is_tai_chi.htm.  As originally
conceived, Tai Chi is "a sophisticated method of fighting based
on the reconciliation of dynamically interacting forces."  <u>Id.</u>

[4]There are two types of martial arts: internal and external.
Foster explained that Karate is an external martial art because
those who practice it focus on achieving "hardness in the limbs."
April 20, 2006, Hear., Tr. at 185; <u>see also</u> Def. Summ. J., Ex.
L, Tim Cartmell, "Internal v. External, What Sets Them Apart?"
<u>Inside Kung Fu Magazine</u>, July 1992, available at
http://www.shenwu.com/Internal_VS_External.htm.

when you combine an external martial art with the inner intensity
achieved by Tai Chi, the result "is exponential."  April 20,
2006, Hear., Tr. at 184.  Similarly, Ruel, a corrections officer
at NCF trained in the martial arts, testified that Tai Chi can be
combined with other martial arts and that the effect could be a
"knock-out to crippling, maiming, and death."  Id. at 151.  Ruel
explained that meditation in Tai Chi acts as a "force multiplier"
and that with the proper intent and focus, "it's unbelievable
what you can accomplish."  Id. at 150.


C.   NCF's Policy on Tai Chi

     After the court's decision in Adams, 237 F. Supp. 2d 136,
in January of 2003, NCF recognized Taoism as a religion and
allowed Taoist followers to practice some forms of Tai Chi.  NCF
does not recognize the practice of Tai Chi, by itself, as a
religion.  NCF also does not allow any martial arts at the prison
besides Tai Chi.  On February 13, 2003, NCF issued a memorandum
allowing Taoist inmates to practice Tai Chi twice weekly in their
gym clothes during the group study times in the education suite
of the prison.  The memorandum expressly prohibited any
"movements that could be deemed combat moves."  Def. Summ. J.,
Ex. P.  In May of 2003, the policy was amended to allow inmates
the ability to practice Tai Chi in housing units and the prison

9

yard.  Another memorandum was issued in August of 2004, that
prohibited combat moves including, "using a closed fist, facing
off, touching other participants, kicking, punching, or moving
toward other participants."  Def. Summ. J., Ex. R.

On May 27, 2005, the policy was revised again.  Taoist
inmates were allowed to practice Tai Chi during their group study
times in the education suite.  In addition, Non-Taoist inmates
were also allowed to practice Tai Chi, provided that they
obtained a Taoist card.  Taoist card-holders were only allowed to
practice Tai Chi in the cell block where they lived.  Also,
Taoist card-holders were required to coordinate their practice
with the Direct Supervision Officer ("DSO") on duty.  The May 27
memorandum outlined the previous prohibitions on certain
movements, but added the following:  "Taoist Tai Chi is defined
(on the Taoist.org website) as gentle turning and stretching
movements.  Any movements that do not fit this criteria as
determined by the DSO are unauthorized and will result in a 39B
write-up, as a minimum."[5]  Def. Summ. J., Ex. K.  The memorandum
also notified inmates that they were only allowed to have

---

[5]NCF allows inmates to practice the Taoist Tai Chi, which is
derived from the Yang style.  At the preliminary injunction
hearing, Foster explained that there are five different styles of
Tai Chi: Yang, Chen, Wu, Hau, and Sun.  The Yang style is "the
most widely practiced style of Tai Chi."  April 20, 2006, Hear.,
Tr. at 178.

practice materials in their possession that had been approved by
the Chaplain.

Major Cox testified regarding the rationale for NCF's May 27
memorandum restricting the practice of Tai Chi at the prison.
Security was his foremost concern.  He testified that in the
prison yard, there is only one correctional officer present to
supervise up to 175 inmates and that conditions can become
violent within seconds.[6]  Given these circumstances, Cox
explained that allowing a martial art within a prison setting
presents additional security issues.  For example, since allowing
Tai Chi, Major Cox testified that inmates were observed
practicing prohibited martial art moves, such as front snap kicks
and karate chops.  He also stated that gang members, such as the
Brothers of White Warriors, were recently observed teaching take
downs and different martial art techniques.  Ruel testified that
he witnessed Starr practicing illegal moves and teaching them to
another inmate.  Cox admitted that he did not believe Starr would
utilize Tai Chi to become violent but stated that he "had to look
at the overall safety of everyone, there are people in that
prison that would watch [Tai Chi], learn [Tai Chi], and they

---

[6]He also noted that the prison was understaffed generally
when the facility opened.

would kill someone one day, I will not be responsible for that."
April 20, 2006, Hear., Tr. at 114-115.

Based on these concerns, Major Cox determined that Tai Chi
practitioners needed close monitoring and proper restrictions.
Specifically, the May 27 memorandum limited the practice of Tai
Chi on the blocks or in the education area to ensure that inmates
could be closely observed.  He also required inmates to alert the
DSO that they planned to practice Tai Chi so that the guards
would be aware when and where the martial art was being
practiced.  Cox also explained that it was necessary to limit
practitioners to the Yang style because his officers were not
sufficiently trained in martial arts in order to distinguish
among the different styles.  For this reason, it was too
dangerous to allow more than one style because a prisoner might
be able to practice combat moves without a guard noticing.

D.  <u>Starr's Beliefs</u>

In his affidavit submitted with his objection to summary
judgment, Starr states that he has practiced Tai Chi for over
twenty years as a form of moving spiritual meditation.  For
Starr, Tai Chi "allow[s] [him] to connect to the divine, and
provide illustrative teaching for the betterment of [his] life."
Starr Obj., Ex. 7, ¶6.  Starr states that his practice of Tai

12

Chi, "especially when practiced outside, provides [him] a means to connect with God's creation, His power, and spirit of life." Id.

Starr testified that he learned Tai Chi through studying Taoism.  In 1994, Starr admits that he was baptized as a Jehovah's Witness.  At this time, he stopped studying Taoism because "of the scriptural admonition . . . which . . . says to remove oneself from association with false religion."  Starr Obj., Ex. 7, ¶5.  Starr did not reject all of the teachings of Taoism, however.  He considered Tai Chi to be one "of the areas of spirituality that . . . did not violate [his] Christian conscience, so [he] continue[s] to believe in and practice the spiritual mediation of Tai Chi."  Id.

On May 24, 2005, Starr submitted an inmate request slip asking where he would be allowed to practice Tai Chi.  He did not want to practice in the education center when the other Taoists were present there.  In response, the prison provided Starr with a copy of the May 27, 2005, memorandum.  On May 31, 2005, Starr submitted a first level legal grievance in which he requested: (1) permission to "practice Tai Chi, in any form and/or style of my choice, within the limitation of refraining from the clearly defined combat movements"; (2) to practice his Tai Chi outside in the prison yard; and (3) to possess "instructional material on

13

Taoism and/or Tai Chi . . . as long as the material does not have any clearly combative material." Ex. 6 to Starr's Complaint.

In June of 2005, Starr met with Chaplain Hoyt. He told the Chaplain that he did not wish to declare himself a Taoist. For this reason, he was not given a Taoist card. The Chaplain told Starr that he could still obtain a Tai Chi card to practice in the education center twice weekly with the other Taoists. According to Starr, he refused this opportunity because it was insufficient for his daily practice. Starr also told the Chaplain that he wished to practice outdoors. Starr's requests and the additional grievances he filed in the summer of 2005 were denied.

On April 13, 2006, Chaplain Hoyt interviewed Starr in order to gauge the sincerity of his belief that Tai Chi was a religious exercise.[7] According to Hoyt, Starr stated that "Tai Chi is a form of meditation and prayer and I require it every day." Def. Summ. J., Ex. T. According to Starr, he told the Chaplain that he "equated [Tai Chi] with prayer because it involved a connection to God." Starr Obj., Ex. 7, ¶10. The Chaplain asked Starr whether he claimed to be a member of any religious group,

---

[7]The Chaplain took notes from this meeting, which he later transcribed. Starr disputes the accuracy of the notes and provides his own depiction of the meeting in his affidavit accompanying his objection to summary judgment.

and Starr responded, "no follow-ship [sp] of any organized religious that has to do with Tai Chi." Def. Summ. J., Ex. T. Next, the Chaplain asked Starr to demonstrate his sincerity in his religious belief and to show that he was not practicing Tai Chi "as a form of exercise of martial art." Id. Starr responded that one could tell that his Tai Chi was meditative and not just exercise if one watched him practice. According to Starr, he also told the Chaplain that "unlike people who are practicing martial arts, my movements are not tense, or quick, nor do[es] [he] do the movements to mimic fighting." Starr Obj., Ex. 7, ¶10.

During the interview, Starr also discussed his problems with NCF's restrictions on Tai Chi. Specifically, Starr informed the Chaplain that in order to practice his Tai Chi effectively, he needed "outside ground contact," that limiting his leg extensions "defeats part of the purpose of Tai Chi," and that correction officers were enforcing the rules inconsistently. Def. Summ. J., Ex. T. Starr also told the Chaplain that he was not taking advantage of the opportunity to practice in the education center because: (1) he wanted the ability to practice every day; (2) he did not wish others to view him as a Taoist; and (3) if the prison forced him to practice his Tai Chi during this time, it would violate RLUIPA.

15

A week after the April 2006 interview, both Starr and Hoyt
testified at the preliminary injunction hearing.  Starr testified
that he was not a Taoist and that he did not have a sincerely
held belief in Taoism.  He stated that Tai Chi was a form of
meditation and prayer.  Chaplain Hoyt testified that he was
"personally not convinced" that Starr possessed a sincerely held
belief in Tai Chi as a religious exercise.  April 20, 2006,
Hear., Tr. at 137.  The Chaplain was concerned because Starr
refused the opportunity to practice Tai Chi twice a week in the
education center and because he was not aware of any member of
the Taoist group objecting to anyone else using the education
area to practice Tai Chi.  Despite his concerns, "to err on the
side of liberty," Chaplain Hoyt agreed to issue Starr a Tai Chi
card granting him the same rights and restrictions as the
Taoists.[8]  April 20, 2006, Hear., Tr. at 121.  On April 14, 2006,
Chaplain Hoyt emailed staff informing them that "effective
immediately, inmate Darrin [sp] Starr is approved as a Tai Chi
practitioner  . . . he is eligible to practice Tai Chi in
accordance with current policy, which includes daily practice on
his block."  Def. Summ. J., Ex. V.

---

[8]The Tai Chi policy has been further modified to require
that all inmates, including Taoists, who wish to practice Tai
Chi, meet with Chaplain Hoyt so that he can assess whether the
inmate possesses a sincerely held belief.

Since that time, Starr has held a temporary Tai Chi card. Starr alleges that his Tai Chi card is temporary, that it will expire after this lawsuit, and that he will be subject to NCF's policy that forbids non-Taoists to practice Tai Chi.  The defendants do not dispute that they will remove his Tai Chi card if they win this lawsuit.

<u>Discussion</u>

Starr argues that the defendants' policies that unduly restrict his practice of Tai Chi violate his rights under the First and Fourteenth Amendments to the United States Constitution, and under RLUIPA.  Concerning RLUIPA, the defendants move for summary judgment on the following grounds: (1) Starr has not established that Tai Chi, practiced apart from Taoism, is part of a religious belief system; (2) Starr has not established the sincerity of his religious beliefs; (3) the prison's restrictions do not place a substantial burden on Starr's practice; and (4) the prison has a compelling state interest, prison security, achieved in the least restrictive means, in limiting the practice of a martial art in a prison environment.  Starr argues that there are disputes of material fact as to each of these issues, precluding summary judgment. Concerning the constitutional claims, the defendants argue that

if Starr's RLUIPA claim fails, it necessarily means that his claims under the Free Exercise Clause, the Establishment Clause, and the Equal Protection Clause all fail.

A.   RLUIPA

RLUIPA states:  "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in 42 U.S.C. § 1997, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. §2000cc-1(a).  A claim under RLUIPA includes four elements. Spratt v. Rhode Island Dept. of Corrs., 482 F.3d 33, 38 (1st Cir. 2007).  "On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears the burden of proof." Id.  "Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest." Id.

18

1.  Religious Exercise

The defendants argue that Starr cannot establish that Tai Chi is part of a system of religious belief or that he has a sincerely held belief in the religious nature of Tai Chi.  Starr argues that there are disputed material facts as to each of these issues, precluding summary judgment.

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  Federal courts are not to sit as "arbiters" of religious orthodoxy. Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 716 (1981).  This reluctance is because "courts are poor arbiters of questions regarding what is religious and what is not." Cloutier v. Costco Wholesale, 311 F. Supp. 2d 190, 196 (D. Mass. 2004); see also Fausto v. Diamond, 589 F. Supp. 451, 461 (D.R.I. 1984)("A determination as to what is or is not religious is at best a most delicate question.")(internal quotation marks and citations omitted).  With this in mind, courts have construed RLUIPA to require a plaintiff to show that the exercise of religion is part of a (1) system of belief and (2) that the plaintiff holds a sincerely held belief in the religious exercise.  Guzzi v. Thompson, 470 F. Supp. 2d 17, 26 (D. Mass. 2007).

19

a.   System of Belief

The defendants argue that Starr has failed to establish that Tai Chi was part of a system of religious belief because he has submitted no authority equating Tai Chi with prayer and because practicing Tai Chi without following Taoism is a decision personal to Starr and not a form of religion.  Starr maintains that he has established that Tai Chi is spiritual meditation that is part of a system of religious belief, or at the very least, a disputed fact remains on this issue.

By its terms, RLUIPA is to be construed broadly to favor protection of religious exercise.  42 U.S.C. § 2000cc-3(g); see also Simpson v. Wrenn, 2008 WL 304890, at *3 (D.N.H. January 31, 2008) (report and recommendation) ("The phrase 'religious exercise' is to be construed liberally.").  Therefore, to fall within the protection of the statute, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others." Guzzi, 270 F. Supp. 2d. at 27 (quoting Thomas, 450 U.S. at 714). Religious beliefs are not to be afforded protection, however, if they are "so bizarre [or] so clearly nonreligious in motivation as not to be entitled to protection under the Free Exercise Clause."  Thomas, 450 U.S. at 715.

Despite the liberal definition of religious exercise, there are limitations.  "The broad definition of a religious exercise

20

in the RLUIPA does not require that the practice be a core tenet of that religion, but it does require the existence of <u>some belief system</u> from which the practice is derived." <u>Guzzi</u>, 470 F. Supp. 2d at 26 (emphasis supplied).  Personal beliefs, grounded <u>solely</u> on subjective ideas as to what a religion requires, however, "will not suffice" because courts need some reference point to assess whether the practice is indeed religious.[9] <u>Id.</u> (emphasis supplied)(citing <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215–16 (1972)(recognizing for purposes of a First Amendment inquiry that individuals are not free to define religious beliefs solely based upon individual preference)).

For example, in <u>Guzzi</u>, an "Orthodox Catholic" inmate brought a motion for injunctive relief after the prison failed to honor his request to keep kosher.  There, the court noted that "the complication in this case is that Guzzi does not allege that he follows Judaism.  He describes himself as an Orthodox Catholic. While keeping kosher within the practice of various sects of Judaism constitutes a religious exercise, keeping kosher itself is not a religion." <u>Guzzi</u>, 470 F. Supp. 2d at 25–26.  The court

---

[9]"The need for some organic system of belief beyond a purely subjective and isolated construction is not an attempt to limit protected religious activities but to limit a factfinder's role in deciding which activities are deserving of such characterization." <u>Guzzi</u>, 470 F. Supp. 2d at 26.

denied injunctive relief because Guzzi did not provide support
beyond his subjective belief that keeping kosher was religious
except "a general cite to Chapter 15 of the Acts of the Apostles
. . . that reference[d] dietary laws typically associated with a
kosher diet."  Id. at 27.  The court decided that this lone cite
was insufficient and that "it is not this Court's role to perform
Biblical interpretation."  Id.

        Similar to situation described in Guzzi, Starr wants to
practice Tai Chi while denying that he is Taoist.  The question
here, therefore, is whether Starr has established a material
factual dispute as to whether the practice of Tai Chi separate
from Taoism is a protected religious exercise.

        In the materials that Starr submitted with his objection to
summary judgment, Starr has offered excerpts from several books
to support the notion that the practice of Tai Chi is separate
from Taoism and that it is a spiritual practice even for its Non-
Taoist followers.  For example, Starr offers an excerpt from Tai
Chi Classics that outlines the history of Tai Chi and that
defines Tai Chi, without mentioning Taoism, as the "ultimate . .
. It means improving and progressing toward the unlimited; it
means the immense existence and the great eternal."  Starr Obj.,
Ex. 2, Waysun Liao, Tai Chi Classics, at 5 (Shambhala 2001).  The
excerpt from Tai Chi Classics also states that "an important

                                    22

factor affecting the practice and progress of one's Tai Chi study
is the discipline of the essence and spirit" and that the
"physical movements of the external body will assist in raising
the essence and spirit."  Id. at 111.  In addition, Starr offers
an excerpt from Tai Chi as a Path of Wisdom, written by a Zen
priest, that discusses the meditative and spiritual qualities of
Tai Chi without any mention of Taoism.  The excerpt from Tai Chi
as a Path of Wisdom states that "Tai Chi is an opportunity to
open to the spiritual rhythm that is present in every moment.
. . . The spiritual rhythm flows deep and through every one of
us.  It flows through every moment of life.  In the [T]ai [C]hi
form, each moment is pregnant with [spiritual rhythm]."  Starr
Obj., Ex. 3, Linda Myoki Lehrhaupt, Tai Chi as a Path of Wisdom,
at 184 (Shambhala 2001).[10]

     With these authorities, Starr has offered support beyond his
subjective opinion that Tai Chi, separate from Taoism, has
spiritual application.  Therefore, construing these authorities
in a light most favorable to Starr, they show a disputed material

_____

     [10]This view that Tai Chi has spiritual application beyond
the Taoist community is supported by Adams, 237 F. Supp. 2d at
139-140. ("Tai Chi began to be practiced by people outside of the
monastic community and became widespread as a martial art.").

fact as to whether the practice of Tai Chi, separate from Taoism, is part of a system of religious belief.

### b.  Sincerity of Belief

The defendants argue that Starr cannot establish that his beliefs are sincere because: (1) he has rejected Taoism as a religion and instead follows the tenets of the Jehovah's Witnesses which forbid the practice of Tai Chi; (2) he failed to take the opportunity to practice Tai Chi in the education center; and (3) he failed to explain to the Chaplain how his beliefs are religious in nature.  Starr contends that he has established that his beliefs are sincere, or in the alternative, that his sincerity cannot be decided at the summary judgment stage.

"Although RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion . . . the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005)(internal quotation marks and citations omitted). "The relevant inquiry is not what others regard as an important religious practice but what the plaintiff believes." Levie v. Ward, 2007 WL 2840388, at *14 (W.D. Okla. Sept. 27, 2007) (citing Cutter, 544 U.S. at 725, n. 3)).  "Individuals have the right to exercise their faith in unique and nontraditional ways." Coronel v. Paul, 316 F. Supp. 2d 868, 881 (D. Ariz. 2004).  Therefore,

24

under RLUIPA "it matters not whether the inmate's religious belief is shared by ten or tens of millions.  All that matters is whether the inmate is sincere in his or her own views."  <u>Levie</u>, 2007 WL 2840388, at *14 (internal citations omitted).

Courts considering whether an inmate's belief is sincere face a "difficult" task.  <u>Blount v. Johnson</u>, 2007 WL 1577521, at *6 (W.D. Va. May 30, 2007); <u>see also</u> <u>Singh v. Goord</u>, 520 F. Supp. 2d 487, 500 (S.D.N.Y. 2007) (the "[c]ourt is conscious of the difficulty of assessing the sincerity of an individual's religious beliefs").  For this reason, and because determining whether an inmate's beliefs are sincere requires assessing the credibility of the inmate, courts have held that the sincerity of an inmate's belief should almost never be decided at the summary judgment stage.[11]  <u>Cf.</u> <u>Kay v. Bemis</u>, 500 F.3d 1214, 1219 (10th Cir. 2007)("The inquiry into the sincerity of a free exercise plaintiff's religious beliefs is almost exclusively a credibility

---

[11]In the context of Title VII, the First Circuit has stated a similar reluctance to assess the sincerity of a religious belief at the summary judgment stage.  <u>E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico</u>, 279 F.3d 49, 56 (1st Cir. 2002)("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions.  As such, they ordinarily should be reserved for the factfinder at trial, not for the court at summary judgment.")(internal citations omitted).

assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment.")(internal citations omitted).

In this case, Starr considers Tai Chi to be one "of the areas of spirituality that d[oes] not violate [his] Christian conscience," so [he] continue[s] to believe in and practice the spiritual mediation of Tai Chi."  Starr Obj., Ex. 7, ¶5.  The defendants argue that Starr's belief cannot be sincere because he has rejected Taoism as a religion and instead follows the tenets of the Jehovah's Witnesses which forbid the practice of Tai Chi. "The fact that an individual's understanding of the origins or reasons for a particular religious practice may be mistaken, incomplete, or at odds with the understanding of other followers and even experts of his stated religion is beside the point when determining whether his personal belief is sincere." Blount, 2007 WL 1577521, at *5 (internal quotation marks and citations omitted).  Therefore, Starr could have a sincerely held belief in Tai Chi as a religious practice even if this belief is at odds with the beliefs of other followers of the Jehovah's Witnesses. See id.

In addition, the defendants argue that Starr cannot establish his beliefs are sincere because he failed to adequately explain his beliefs to Chaplain Hoyt.  For example, Chaplain Hoyt testified that after his two meetings with Starr, he did not

26

consider Starr's beliefs to be sincere because: (1) he did not take the opportunity to practice Tai Chi twice a week in the education center; (2) Starr failed to state how Tai Chi was religious in nature; and (3) when the Chaplain asked Starr to demonstrate how his beliefs were sincere, Starr simply stated that one could tell it was meditative by watching him practice. The defendants argue that the Chaplain's conclusion warrants a finding that Starr has failed to satisfy his burden on the sincerity of his beliefs.

Starr disputes Hoyt's conclusions and argues that he has provided sufficient evidence to show that he considers Tai Chi as a form of spiritual meditation that helps him connect with God. He points to the fact that he has practiced Tai Chi for over twenty years and that his original teachers taught him that the practice was for spiritual meditation.  In his affidavit, Starr states that Tai Chi is a "method and means of spiritual improvement.  The movements themselves provide a spiritual moving meditation, allow [him] to connect to the divine, and provide illustrative teaching for the betterment of [his] life."  Starr Obj., Ex. 7, ¶6.  Starr states that his practice of Tai Chi, "especially when practiced outside, provides [him] a means to connect with God's creation, His power, and spirit of life."  Id.

Starr also argues that his sincerity is a credibility
determination that should not be decided on summary judgment.

     The relevant inquiry in this case is what Starr believes.
He has offered evidence, by way of his affidavit and his
testimony, demonstrating that Tai Chi is a spiritual exercise and
that he has a sincerely held belief in it.  This evidence,
construed in a light most favorable to Starr, raises a dispute of
material fact as to whether his beliefs are sincerely held.


     2.  Substantial Burden

     The plaintiff also bears the burden of persuasion to
establish that the defendants' policy substantially burdens the
plaintiff's exercise of religion.  <u>Spratt</u>, 482 F.3d at 38.  The
First Circuit has recently noted that it had "not yet had the
opportunity to define what constitutes a 'substantial burden'
under RLUIPA."  <u>Id.</u>  The court assumed arguendo that the
following standard from <u>Thomas</u>, 450 U.S. at 718, applies:  a
substantial burden is one that puts "substantial pressure on an
adherent to modify his behavior and to violate his beliefs."[12]
<u>Id.</u>; <u>see also</u> <u>Lovelace v. Lee</u>, 472 F.3d 174, 187 (4th Cir. 2006);

---

     [12]This definition is based on the Supreme Court's definition
of substantial burden in the related context of the Free Exercise
Clause.

Farrow v. Stanley, 2005 WL 2671541, at *4 (D.N.H. Oct. 20, 2005).[13]

Courts "have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise." Greene v. Solano County Jail, 513 F.3d 982, 988 (9th Cir. 2008). If the prison affords an inmate an opportunity to practice religion with some limitation that makes the inmate's religious practice more "difficult" or inconvenient, there is no substantial burden because there is no tendency to coerce. Hudson v. Dennehy, ––– F. Supp. 2d ––––, 2008 WL 587967, at *5 (D. Mass. Mar. 5, 2008); see also Smith v. Allen, 502 F.3d 1255, 1279 (11th Cir. 2007) (limiting religious practices to a secure location "did not place more than an incidental burden on his practice" because "inmate remained free to engage in his religious observances . . . albeit limited to a secure, rather than an open, area of the

---

[13]Not all circuits are in agreement as to this definition of substantial burden. Washington v. Klem, 497 F.3d 272, 279–280 (3d Cir. 2007). The Eighth Circuit requires significant infringement on a "central tenet" or "fundamental" activity of religious practice. Murphy v. Mo. Dep't of Corrs., 372 F.3d 979, 988 (8th Cir. 2004). In the Fifth Circuit, a restriction is a substantial burden "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004).

prison")(internal citation omitted); <u>Couch v. Jabe</u>, 479 F. Supp.
2d 569, 585 (W.D. Va. 2006) (no substantial burden where
restriction "diminished the overall spiritual experience").

In this case, Starr contends that his religious practice has
been substantially burdened because NCF's restrictions on Tai Chi
interfere with his spiritual meditation and his ability to
connect with God.  He challenges NCF's restrictions on the
materials that he may possess and NCF's policies that require him
to obtain permission before he practices Tai Chi on his block,
that prohibit him from practicing Tai Chi outside in the prison
yard, and that limit the style or form of Tai Chi that he may
practice.  The defendants argue that Starr has the same rights
and restrictions on his Tai Chi practice as the Taoists and that
Starr has not established how the restrictions burden his
spiritual exercise.

### a.  Tai Chi Instructional Materials

Starr argues that the prison's restrictions on the
instructional materials that he may possess places a substantial
burden on his religious exercise because it restricts his ability
to grow in his form and understanding of Tai Chi.  Specifically,
he complains that NCF's policy limits him to the possession of
Tai Chi instructional materials that were drawn by Anthony Lim,

another NCF inmate.  Starr contends that Lim is not accredited as a Tai Chi instructor and that Lim's drawings only depicted the Yang style basic movements.  Starr contends that he should not be limited by these drawings because his study of Tai Chi should be broad and diversified.

It is undisputed that NCF's policy requires inmates to seek approval to possess Tai Chi materials through Chaplain Hoyt. According to Chaplain Hoyt, Anthony Lim was the only inmate who had submitted materials that have been approved and that Starr can submit additional materials if he desires.  Chaplain Hoyt also testified that there are a dozen books in the prison library about Tai Chi.  According to Starr, he submitted a book for approval, Complete Tai Chi, but he admits it was rejected by Chaplain Hoyt because it contained the words punch, parry, and strike.  NCF has not banned all Tai Chi literature and has provided Starr with the opportunity to supplement Lim's drawings as long as they do not depict combative moves.  Therefore, Starr has failed to raise a material factual dispute as to whether the defendants' instructional material policy substantially burdens his religious exercise.

### b.  DSO Permission

Starr also complains that he should not have to inform the DSO on duty if he wants to practice Tai Chi on the block, that the DSOs have "unfettered" discretion to deny inmates permission to practice Tai Chi, and that certain shifts of correction officers allowed kicking motions, while others did not.  Despite making these complaints, Starr has not explained how asking for permission from a DSO substantially burdens his religious exercise, and he has not offered any evidence showing that DSOs have arbitrarily denied his requests to practice Tai Chi.  Therefore, Starr has failed to raise a material factual dispute as to whether NCF's permission requirement substantially burdens his religious exercise.

### c.   Restrictions on Form/Outside Practice

Starr argues that the defendants' policy restricting his Tai Chi practice to indoors substantially burdens his religious exercise because he must practice Tai Chi outside in order to properly "ground" so that he is able to properly meditate and connect to the earth's "Chi."  Starr also argues that NCF's prohibitions on leg extensions and limiting his practice to only the Yang form substantially burdens his religion by interfering with his spiritual meditation.  The defendants argue the outdoor

prohibition and the restrictions on form do not substantially
burden Starr's religious beliefs because under the current rules,
he can still accomplish his meditative goals and because Starr's
insistence on practicing outside is a matter of personal
preference not a religious mandate.

The defendants rely on Betsey Foster's testimony that Tai
Chi involves imagery and visualization and the concept of "Chi,"
a type of energy that is a directed by the mind.  According to
Foster, because "Chi" can be directed by the mind, meditation can
be achieved even when there are restrictions on movement and
form.  She also testified that the visualization process called
"rooting" -- which means envisioning part of the body rooting
deep into the center of the earth -- can be practiced in a small
area, inside or outside, and that it is a matter of personal
preference.

Starr disputes Foster's conclusions about meditation and the
channeling of energy.  First, he contends that the physical
movements in Tai Chi are designed to aid in the movement of Chi
and that NCF's prohibition on leg extensions inhibits his flow of
Chi which interferes with his meditation.  As support for this
argument, Starr offers materials that discuss generally that the
physical movements aid in meditation by helping to "channel" the
energy through the body.  Second, Starr also claims that the Yang

form restriction limits his ability to "grow and learn more about the universe, and by extension, limits [his] connection to God and his creation."  Starr Obj., Ex. 7, ¶7.

In addition, Starr disagrees with Foster's conclusions about outdoor practice.  Starr claims that "the practice of [T]ai [C]hi outside allows [him] to directly connect with the earth's [C]hi, and by extension, all of God's creation."  Starr Obj., Ex. 7, ¶7. Starr argues that there is a difference between "rooting," which can be accomplished inside, and "grounding" which must occur outside.  At the preliminary injunction hearing, Starr testified that "one of the fundamental teachings of Tai Chi is proper grounding" and that the most "beneficial way [to ground] is to actually be outside in direct contact with the earth."  April 20, 2006, Hear., Tr. at 8.  When further pressed by defense counsel, however, Starr admitted that there is no "must" requirement for outdoor practice in any of the authorities that he submitted. Id. at 32.  Instead, Starr testified that outside practice produces the optimal results.  Similarly, in his objection to summary judgment, Starr asserts that Tai Chi is "best practiced" outside, but he does not say that it is required.  Starr Obj. at 10 (emphasis supplied).

Taking the facts in a light most favorable to Starr, he has failed to show a material factual dispute as to whether the

prison's outdoor prohibition substantially burdens his religious exercise because he has not demonstrated that outside practice is a requirement of Tai Chi.  Specifically, Starr has not raised a material factual dispute on this issue because he failed to rebut Foster's testimony that the decision to practice outside versus inside is a personal decision, rather than a religious one. Similarly, Starr has failed to establish a dispute of material fact as to whether the defendants' restriction on the form of Tai Chi substantially burdens his religious exercise.  Starr failed to rebut Foster's testimony that Tai Chi meditation is not diminished when certain movements are restricted.  The materials that Starr offers only discuss how the movements in Tai Chi aid in channeling energy through the body, and none of the materials say that limitations on certain movements or form inhibit meditation.

By limiting the type of Tai Chi instructional materials that inmates may possess, by requiring inmates to check in with DSOs prior to practicing Tai Chi, and by restricting the form of Tai Chi and the location where it is practiced, the defendants have not completely banned Tai Chi.  At worst, NCF's Tai Chi policies may "diminish the overall spiritual experience" for Starr or may have made it more difficult for him to practice his religion. Either way, Starr has failed to create triable issue as to

whether the restrictions in place rise to the level of a substantial burden.

To avoid summary judgment on his RLUIPA claim, Starr bore the burden of showing a material factual dispute as to whether his religious exercise has been burdened by the defendants and that the burden is substantial.  Although Starr met part of his burden by showing a material factual issue as to whether Tai Chi is part of a system of religious belief and whether he has a sincerely held belief in his Tai Chi practice, he failed to show a material factual issue as to whether the defendants' restrictions impose a substantial burden on his practice of Tai Chi.  Even if Starr were able to raise a triable issue as to whether his religious exercise is substantially burdened, as described below, the defendants have carried their burden of demonstrating that its Tai Chi restrictions serve a compelling state interest using the least restrictive means.

### 3.  Compelling Interest and Least Restrictive Means

Under RLUIPA, the defendants bear the burden of proving that their Tai Chi restrictions further a compelling governmental interest that is the least restrictive means of achieving that compelling interest.  <u>Spratt</u>, 482 F.3d at 38.  Because the defendants are both the moving party and the party with the

36

burden of proving at trial that their Tai Chi restrictions serve
a compelling state interest using the least restrictive means,
they must carry their burden of proof with conclusive evidence.
See Union Independiente de la Autoridad de Acueductos y
Ancantarillados de P.R., 279 F.3d at 55; see also Walls v.
Schiro, 2008 WL 544822, at *10 (D. Ariz. Feb. 26, 2008)(in RLUIPA
burden-shifting scheme, "when the party moving for summary
judgment will also have the burden of proof at trial, to prevail
on summary judgment it must show that the evidence is so powerful
that no reasonable jury would be free to disbelieve it.")
(internal quotation marks and citations omitted).  Evidence is
conclusive if: "1) the moving party initially produces enough
supportive evidence to entitle the movant to judgment as a matter
of law (i.e., no reasonable jury could find otherwise even when
construing the evidence in the light most favorable to the non-
movant), and (2) the non-movant fails to produce sufficient
responsive evidence to raise a genuine dispute as to any material
fact."  Murphy v. Franklin Pierce Law Ctr., 882 F. Supp. 1176,
1180 (D.N.H. 1994)(citing Fitzpatrick v. City of Atlanta, 2 F.3d
1112, 1115-17 (11th Cir. 1993)).

a.  Compelling State Interest

The defendants argue that the current Tai Chi policy that restricts the form and the location where it is practiced is necessary for security concerns.  Starr argues that he should be allowed to practice Tai Chi without any restrictions on form because the prison allows contact sports such as basketball.  He also points to other activities that could potentially lead to danger, such as horseshoes or the use of razor blades during hobby crafts.  As for outdoor practice, Starr claims that the defendants have waived their argument that the outdoor restriction serves a compelling interest because Cox testified at the preliminary injunction hearing that Tai Chi "would be allowed to be practiced in the general yard."  Starr Obj. at 13.

RUILPA is not intended to "elevate accommodation of religious observances over an institution's need to maintain order and safety."  Cutter, 544 U.S. at 722.  Security concerns require "particular sensitivity" and are a compelling state interest.  Id. at 723; see also Hudson, 2008 WL 587967, at *5.  While "prison officials are to be accorded substantial deference in the way they run their prisons, this does not mean that we will rubber stamp or mechanically accept the judgments of prison administrators."  Spratt, 482 F.3d at 40 (internal quotation marks and citations omitted).  "Merely stating a compelling

38

interest does not fully satisfy [the prison's] burden on this element of RLUIPA; [the prison] must also establish that prison security is furthered by [the restrictions in place]. Id. at 39; see also Keesh v. Smith, 2007 WL 2815641, at *21 (N.D.N.Y. Sept. 25, 2007) (merely raising the "specter" of security is not sufficient to outweigh the inmates' interests).

In this case, the defendants are not merely raising the specter of a security concern.  Instead, the defendants have presented undisputed evidence that Tai Chi poses a unique danger in a prison environment, making it different from basketball and the other prison activities cited by Starr.  While other activities may present a risk of accidental injury or misuse of equipment, the defendants offered testimony from an expert and from officials at NCF that Tai Chi is a martial art with moves that are potentially dangerous, especially when combined with other martial arts.  For example, Major Cox and Ruel testified that they have witnessed inmates at the NCF practicing prohibited Tai Chi moves, including moves that incorporate movements from Karate.  They also observed gang members practicing take downs and other dangerous martial art maneuvers.  Cox also testified

that Tai Chi is limited to indoor areas because conditions in a
prison yard can become violent in a matter of seconds.[14]

Based on the testimony provided by Cox, Foster, and Ruel,
the defendants have produced convincing evidence that their Tai
Chi restrictions serve a compelling governmental interest, prison
security.  Other than pointing to the fact that the prison allows
contact sports and that other activities may present a risk of
accidental injury or misuse of equipment, Starr has failed to
produce sufficient responsive evidence to rebut the defendants'
evidence and has failed to raise a genuine dispute of material
fact on this issue.  Therefore, the defendants have carried their
burden of proof on this issue with conclusive evidence.

### b.  Least Restrictive Means

The defendants argue that they have offered undisputed
evidence that the restrictions they have placed on the practice
of Tai Chi are the least restrictive possible.  Starr disputes

---

[14]When asked a hypothetical question by Starr, Cox testified
that he would allow Tai Chi to be practiced outside in a
designated area of the prison yard if the court ordered it or if
the Taoists or a Tai Chi card holder asked for it.  Cox never
said that Tai Chi would be allowed outside without restriction,
and his testimony as a whole clearly establishes why the
defendants' current policy restricts Tai Chi to indoor areas.
Therefore, Starr's assertion that the defendants have waived
their argument that the outdoor prohibition serves a compelling
interest has no merit.

this, arguing that the defendants have not considered lesser
restrictive means because each of the defendants' policy
memoranda contain the exact same restrictions as the memorandum
it replaced.

"A 'least restrictive means' is one that does not sweep
'more broadly than necessary to promote the government's
interest.'" Hudson, 2008 WL 587967, at *6 (quoting Casey v. City
of Newport, 308 F.3d 106, 114 (1st Cir. 2002)). "A prison cannot
meet its burden to prove the least restrictive means unless it
demonstrates that it has actually considered and rejected the
efficacy of less restrictive measures before adopting the
challenged practice." Spratt, 482 F.3d at 41 (internal quotation
marks and citations omitted). RLUIPA does not "require prison
administrators to refute every conceivable option to satisfy the
least restrictive means prong . . . [but] their rejection [of
competing alternatives] should generally be accompanied by some
measure of explanation." Id. at 41 n. 11 (internal quotation
marks and citations omitted).

Specifically, "all or nothing" approaches by prison
officials are usually not the least restrictive means. See
Spratt, 482 F.3d at 41; see also Johnson v. Martin, 2005 WL
3312566, at *7 (W.D. Mich. Dec. 7, 2005)("total ban on Melanic
Literature is not the least restrictive means available to assure

41

prison security").  Where a prison allows some means for its inmates to practice the religion in question, however, it weighs against a finding of a RLUIPA violation.  See Ulmann v. Anderson, 2004 WL 883221, at *10 (D.N.H. April 26, 2004)(no RLUIPA violation where prison disallowed candles and glass but allowed inmate option of celebrating Hanukkah with a rabbi and lighting an electronic menorah).

In this case, the defendants demonstrated that they have not taken an "all or nothing" approach in restricting Tai Chi because Tai Chi is allowed to be performed indoors where it can be properly supervised in a controlled setting.  In addition, the defendants have shown that they have considered other options and they have explained why the restrictions are necessary.  For example, Cox testified that the restriction limiting inmates to only the Yang form is necessary because it would be impossible for his officers to learn all of the different styles in order to be able to differentiate the prohibited moves from those that are allowed.  Cox also testified that Tai Chi is limited to indoor areas rather than outside in the prison yard because martial arts activities need close supervision and because conditions in a prison can become violent in a matter of seconds.

Starr's argument that the policy memoranda never changed is incorrect.  For example, in May of 2003, the prison allowed Tai

Chi to be practiced outside, but after inmates were observed practicing prohibited moves, outdoor practice was later banned in May of 2005.  The defendants have offered undisputed and persuasive evidence that they have not completely banned Tai Chi, that they have considered other alternatives, and that they have explained the rationale for the restrictions in place.  Starr has failed to rebut the evidence provided by the defendants in order to create a dispute of material fact as to this issue. Therefore, the defendants have provided conclusive evidence on this issue and have satisfied their burden of proof.

To summarize, the defendants are entitled to summary judgment on Starr's RLUIPA claim because he has failed to raise a triable issue as to whether the defendants' Tai Chi policies substantially burden his religious exercise.  Even if Starr could raise a dispute of material fact on this element of claim, the defendants would still be entitled to summary judgment because they have carried their burden with conclusive evidence that their policies serve a compelling state interest using the least restrictive means.

B.   Free Exercise Clause Claim

In Starr's complaint, he alleges that the defendants interfered with his First Amendment rights by creating a policy

43

which prohibits him from "engaging [in] his religious exercise of Tai Chi." Starr Complaint, ¶46. The Free Exercise Clause of the First Amendment requires that the government respect and not interfere with the religious beliefs and practices of those protected by the United States Constitution. Cutter, 544 U.S. at 719. Under the Free Exercise Clause, the practice of a prisoner's sincerely held religious belief must yield to prison regulations that are "reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987).

The Free Exercise Clause provides less protection to religious practice, however, than RLUIPA. Ulmann, 2004 WL 883221, at *10 n. 17 (citing Madison v. Riter, 355 F.3d 310, 315 n.1 (4th Cir. 2003)). If there is no RLUIPA violation, there will be no Free Exercise Clause violation. See id.

In this case, as determined in the context of Starr's RLUIPA claim, the court has concluded that Starr failed to establish a dispute of material fact as to whether the defendants' Tai Chi restrictions substantially burden his religious exercise. The court also concluded that the defendants have satisfied their burden with conclusive evidence that their Tai Chi policies serve a compelling state interest using the least restrictive means. Because there are no triable issues as to a RLUIPA violation,

44

which imposes a stricter burden on the defendants than the Free
Exercise Clause, then there necessarily are no triable issues as
to Starr's Free Exercise Clause claim.


C.   Establishment Clause & Equal Protection Clause Claims

     In Starr's complaint, filed in 2006, he alleges that the
defendants violated the Equal Protection Clause of the Fourteenth
Amendment and the Establishment Clause of the First Amendment by
not granting him a Tai Chi card.  Since that time, however, the
defendants have provided Starr a Tai Chi card with the same
restrictions on the time and location of practice as the Taoists.
Starr argues that his Tai Chi card is temporary, that it will
expire after this lawsuit, and that he will be subject to NCF's
policy of forbidding non-Taoists from practicing Tai Chi.  Starr
claims that if the defendants remove his card, they will be in
violation of the Establishment Clause because he will be forced
to choose between following the tenets of the Jehovah's Witnesses
and following the Taoist religion, to which he does not adhere,
in order to obtain a Tai Chi card.  He also claims that his Equal
Protection rights will be violated because the defendants will be
treating him differently from others who practice Tai Chi.

      The defendants do not dispute that if Starr loses this
lawsuit, they will deny him the privilege of practicing Tai Chi.

The defendants argue, however, that if they remove Starr's Tai
Chi card, there is no Establishment Clause or Equal Protection
violation, arguing that if Starr does not prevail in the current
lawsuit, that would "necessarily involve the court's
determination that his rights are not being violated."  Def.
Reply at 11.

In considering Starr's RLUIPA claim, the court concluded
that Starr succeeded in demonstrating that there is a genuine
issue of material fact as to whether his Tai Chi practice is part
of a system of religious belief and whether he has a sincerely
held belief in this practice.  Summary judgment is appropriate,
however, because Starr failed to create a triable issue as to
whether the defendants' current Tai Chi restrictions
substantially burden Starr's religious exercise.  Even if Starr
could raise a triable issue as to the substantial burden element,
the defendants satisfied their burden in demonstrating with
conclusive evidence that the <u>current</u> Tai Chi restrictions serve a
compelling state interest using the least restrictive means.
Although the defendants' <u>current</u> restrictions – which allow Starr
to practice Tai Chi without declaring himself a Taoist, albeit
with certain place and time restrictions – do not create any
triable issues as to a RLUIPA violation, the court has not made
any determination as to whether Starr's rights would be violated

if the defendants place additional restrictions on Starr's Tai
Chi practice or if they ban Starr's practice outright.

The defendants are ill advised in announcing what their
future action will be concerning Starr's Tai Chi card before they
have had the opportunity to assess, with great care, this court's
rulings and this opinion which sets forth the reasons for those
rulings.  Because Starr has a Tai Chi card and because there are
no triable issues as to whether the current restrictions, as they
apply to Starr, violate RLUIPA or the constitution, Starr's claim
based on what may happen in the future raises a ripeness issue.
See City of Fall River, Mass. v. F.E.R.C., 507 F.3d 1, 6-7 (1st
Cir. 2007).  Federal courts do not have jurisdiction to give
advisory opinions.  Cotter v. City of Boston, 323 F.3d 160, 173
(1st Cir. 2003).  The court will not decide Starr's prospective
claim at this time, as the consequences he expects may not occur
as he anticipates or may not occur at all.  See City of Fall
River, Mass., 507 F.3d at 6-7.

<u>Conclusion</u>

For the foregoing reasons, Starr's Motion to Strike the defendants' Reply (document no. 87) is denied, Starr's Motion for Leave to File a Surreply is denied (document no. 88), and the defendants' motion for summary judgment (document no. 80) is granted.  The clerk of court shall enter judgment accordingly and close the case.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

April 28, 2008

cc:  Mary E. Maloney, Esquire
     Darren Starr, pro se